```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
```
_____

KENNETH RENARD WRIGHT,

        Plaintiff,        **No. 6:13-cv-06585(MAT)**
  - vs -                     **DECISION AND ORDER**

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

        Defendant.
_____

## I. Introduction

Kenneth Renard Wright ("Plaintiff"), represented by counsel, brings this action pursuant to Title II of the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security ("the Commissioner") denying his application for disability insurance benefits ("DIB"). The Court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' motions for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).

## II. Procedural History

Plaintiff protectively filed an application for DIB on April 25, 2011, alleging disability since June 9, 2009, due to diabetes mellitus, high blood pressure, emotional distress, high cholesterol, and respiratory problems. T.189, 205.[1] After Plaintiff's application was denied, he appeared with his attorney

---

[1] Citations to "T." refer to pages in the certified copy of the administrative transcript, filed by the Commissioner in connection with her Answer to the Complaint.

at a hearing on June 5, 2012, before Administrative Law Judge Ramon Suris-Femandez ("the ALJ"). T.35-64. Two impartial medical experts and a vocational expert also testified. T.46-63; 143-87. On June 27, 2012, the ALJ issued an adverse decision. T.9-34. The Appeals Council denied review on September 24, 2013, making the ALJ's decision the Commissioner's final decision. This action followed.

**III. The ALJ's Decision**

At step one, the ALJ found that Plaintiff, who met the insured status requirements through December 31, 2014, had not performed substantial gainful activity during the relevant period (June 9, 2009, through June 27, 2012). T.14. At step two, the ALJ found that Plaintiff had the following severe impairments: diabetes mellitus II, polyarthritis of the right knee, and depressive disorder, not otherwise specified ("NOS"). T.14, 16. The ALJ found that Plaintiff's alleged respiratory problems did not constitute a severe impairment because the medical records showed no complaints or clinical findings of, e.g., shortness of breath, coughing, or wheezing. T.14. Although Plaintiff alleged arthritis in his hands and carpal tunnel syndrome, the ALJ found that the record did not support this. The ALJ declined to find Plaintiff's hypertension and hyperlipidemia to be severe impairments because there was no indication that these conditions had resulted in more than minimal limitations in his ability to perform work-related activities.

Also, his high cholesterol was adequately controlled with medication. Finally, although Plaintiff included back pain as one of his disabling impairments, Plaintiff had not reported this impairment at the time he filed his application. Plaintiff's primary care physician, David Stornelli, M.D., consistently diagnosed lumbago or joint pain at multiple sites, but none of Dr. Stornelli's progress notes showed objective musculoskeletal or neurological findings. T.16. Finally, consultative internist Dr. Sirotenko, who provided a detailed report on June 14, 2010, found that Plaintiff's physical examination was completely unremarkable in terms of his lower back. In particular, Plaintiff's lumbar spine showed full flexion, extension, lateral flexion, and rotation; and his lumbar x-rays showed no significant abnormalities. T.16.

The ALJ then considered Plaintiff's medically determinable severe impairments in light the following listed impairments: 12.04 (affective disorders); 1.02 (major dysfunction of a joint (i.e., the knee)); and 9.00 (endocrine disorders). At the hearing, the ALJ heard testimony from an impartial psychiatrist, Dr. Ramon Fortuno; and an impartial internist, Dr. German Malaret. T.46-56. Both Dr. Fortuno and Dr. Malaret testified that Plaintiff's physical and mental impairments, either singly or in combination, did not meet or medically equal any listed impairment. T.16-18. With regard to his depressive disorder NOS, the ALJ found that Plaintiff had mild

limitations in activities in daily living, no limitations in social functioning, moderate difficulties in maintaining concentration, persistence, or pace, and no episodes decompensation. T.16-18. Thus, because his mental impairment did not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation, the "paragraph B" criteria of Listing 12.04 were not met. As to Listing 1.02 (major dysfunction of a joint), the ALJ found that although Plaintiff has chronic right knee pain secondary to arthritis with some joint-space narrowing in the medial and lateral compartments, there was no indication of gross anatomical deformity, stiffness, or bony destruction of the joint. The ALJ acknowledged that Plaintiff's gait consistently has been described as antalgic and that he uses a cane, but he found that Plaintiff did not have the severe degree of difficulty ambulating that is required by Listing 1.02.[2]

The ALJ next determined that Plaintiff retained the residual functional capacity ("RFC") to perform light work,[3] with certain limitations. T.18. Plaintiff could stand and/or walk for 4 hours in

---

[2] The ALJ did not specifically analyze why Plaintiff does not meet Listing 9.00 (endocrine disorders), but Plaintiff does not challenge that finding on appeal.

[3] Light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 416.967(b). A job may also be in this category "when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." Id.

an 8-hour workday; could sit for about 6 hours in an 8-hour workday; could never climb scaffolds, kneel, crouch, crawl, or stoop; and could occasionally climb stairs. Id. The ALJ further found that Plaintiff could perform simple and routine tasks and follow short, simple instructions. Id.

At step four, the ALJ found that given his RFC of less than the full range of light work, Plaintiff could no longer perform his past employment, which included clean-up worker (heavy and unskilled) and security guard (light and semiskilled). T.28.

At step five, based upon both the Medical-Vocational Guidelines and the vocational expert testimony, the ALJ found that Plaintiff could perform such representative occupations as addresser, document preparer, and telephone-answering/service operator. T.30. Accordingly, the ALJ entered a finding of "not disabled." Id.

**V.   Standard of Review**

Title 42 U.S.C., § 405(g) authorizes district courts "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." This Court's function is not to determine de novo whether a claimant is disabled, Pratts v. Chater, 94 F.3d 34, 37 (2d Cir. 1996) (citation omitted), but rather to evaluate whether the Commissioner applied the correct legal standard in making the

determination and, if so, whether such determination is supported by substantial evidence in the record. E.g., Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (citing 42 U.S.C. § 405(g)). A deferential standard does not apply to the Commissioner's application of the law, however, and this Court independently must determine if the Commissioner applied the correct legal standards in arriving at her decision. See Townley v. Heckler, 748 F.2d 109, 112 (2d Cir. 1984) ("Failure to apply the correct legal standards is grounds for reversal.").

## VI. Plaintiff's Contentions

### A. Failure to Develop the Record

Plaintiff asserts that remand is required because the ALJ failed to fulfill his obligation to develop the record when he did not send Plaintiff for further testing, despite the independent medical expert's clinical impression of diabetic neuropathy. Defendant argues that the Social Security Administration is not a health management organization, and therefore the ALJ had no duty to send Plaintiff for diagnostic testing.

At the hearing, independent medical expert ("IME") Dr. Malaret specifically noted during his testimony as follows:

> Now, the record shows that [Plaintiff] has – stated here, that he has this burning sensation in his feet and his hands, face and various parts and *clinically it sounds like he has diabetic neuropathy, but unfortunately there have been no tests for diabetic neuropathy*. No electromyograms or nerve conduction studies that have been done. Clinically I suspect that he does have it.

T.46 (emphasis supplied). When questioned by Plaintiff's attorney, the following exchange clarified Dr. Malaret's position:

> [Q]: Well, Doctor, you noted that [Plaintiff's] complaints of burning in the soles of the feet and also in the hands was clinically consistent with diabetic neuropathy. Is that correct?
> [A]: I do. I feel he does have diabetic neuropathy.
> [Q]: Okay.
> [A]: But we don't have any tests to confirm[] it.
> [Q]: Well, there may not be-
> [A]: *Clinically, as far as I'm concerned he does have it.*
> [Q]: Okay. *So the evidence that is there indicates that he does have it, although it just wasn't confirmed by objective testing, correct?*
> [A]: *That's correct.*

T.50-51 (emphasis supplied).

In his decision finding Plaintiff not disabled, although he gave significant weight to Dr. Malaret's testimony overall, the ALJ disregarded Dr. Malaret's clinical opinion that Plaintiff was suffering from diabetic neuropathy, stating, "Although the medical expert's diagnostic impression might be correct, I am forced to reject it, as it is based on the claimant's subjective complaints, not on the objective medical evidence." T.26.

In drawing this conclusion, the ALJ erred. The ALJ's rejection of the diagnostic impression because it allegedly had no basis other than Plaintiff's subjective complaints (burning sensations in his feet, hands and face) reflects a misapplication of the pertinent caselaw and regulations. In Green-Younger v. Barnhart, 335 F.3d 99 (2d Cir. 2003), the Second Circuit observed that "[a] patient's report of complaints, or history, is an essential

diagnostic tool.'" Id. at 107 (quoting Flanery v. Chater, 112 F.3d 346, 350 (8th Cir. 1997); alteration in original); see also id. (stating that "[t]he fact that [the doctor] also relied on [the claimant]'s subjective complaints hardly undermines his opinion as to her functional limitations"). The ALJ also ignored the fact that clinical diagnostic techniques are a valid source of support for a physician's opinion. See, e.g., 20 C.F.R. § 416.927(d)(2) (when "a treating source's opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s) is well-supported by *medically acceptable clinical* and laboratory *diagnostic techniques* and is not inconsistent with the other substantial evidence in [the claimant's] case record, [it will be given] controlling weight") (emphases supplied).[4] Furthermore, the Second Circuit has held that "[w]hile a claimant must show that the physical or mental impairment by reason of which he claims to be disabled 'results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques,' 42 U.S.C. s 423(d)(3), this does not mean that medical opinion must necessarily be supported by 'objective' clinical or laboratory findings.'" McLaughlin v. Secretary of Health, Educ. and Welfare of U.S., 612 F.2d 701, 704

---

[4] The Court recognizes that Dr. Malaret is not a treating source, but notes that the reference to clinical diagnostic techniques in Section 416.927(d)(2) is instructive.

(2d Cir. 1980) (quoting Cutler v. Weinberger, 516 F.2d 1282, 1286-87 (2d Cir. 1975)).

Dr. Malaret also testified that if Plaintiff did suffer from diabetic neuropathy, it could potentially affect his ability to stand, do fine manipulations with his fingers, and do larger movements with his hands and arms. T.50-51. This, in turn, could have led to a more restrictive RFC, including, but not limited to, greater limitations on the total amount of time Plaintiff would be able to stand, during an 8-hour workday as well as limitations on reaching, handling, and fingering. Two of the jobs that the VE found Plaintiff could perform required frequent reaching, handling, and fingering, and one of the jobs required constant reaching, handling, and fingering. The Court notes that, fairly read, Dr. Malaret's testimony indicates that, in light of Plaintiff's symptoms of diabetic neuropathy, objective diagnostic testing should have been performed. T.46 (noting that "unfortunately there have been no tests for diabetic neuropathy" such as "electromyograms or nerve conduction studies"). However, the ALJ relied on this gap in the administrative record to demonstrate support for his rejection of Plaintiff's subjective complaints that were consistent with diabetic neuropathy. The Court notes that this gap in the record was not attributable to, e.g., Plaintiff's refusal to have such tests performed.   Given that the ALJ gave "great" weight to the remainder of Dr. Malaret's opinion, this

error was significant and calls for the case to be remanded. See, e.g., Nix v. Astrue, No. 07-cv-344, 2009 WL 3429616, at *6 (W.D.N.Y. Oct. 22, 2009) ("It is a fundamental tenet of Social Security law that an ALJ cannot pick and choose only parts of a medical opinion that support his determination.") (citations omitted).

**B.   Erroneous RFC Assessment**

Plaintiff contends that the ALJ's RFC assessment was erroneous because the ALJ did not take into account Plaintiff's possible diagnosis of diabetic neuropathy, failed to include a shifting-of-positions option, and failed to take into consideration that Plaintiff ambulates with a hand-held assistive device.

With regard to the possible diabetic neuropathy diagnosis based on IME Dr. Malaret's comments at the hearing, the Court has discussed this supra, in the context of Plaintiff's claim that the ALJ failed to develop the record by ordering diagnostic testing such as nerve conduction studies. Contrary to Defendant's contention, Dr. Malaret did not retreat from his diagnostic impression after reviewing CE Dr. Sirotenko's medical report. T.26, 50, 56, 331. Rather, Dr. Malaret simply noted that Dr. Sirotenko had described the fine motor activity of Plaintiff's hands as completely normal. However, Dr. Sirotenko did not perform any objective testing to rule out or confirm diabetic neuropathy. There were other areas of Plaintiff's body besides his hands in which he

was having burning and pain, including the soles of his feet. T.50. Dr. Malaret agreed that Plaintiff's diabetes had "been uncontrollable most of the time[.]" T.51. Given that Dr. Malaret had criticized Dr. Sirotenko's report in other respects for purportedly not indicating the bases on which he was assigning "significant" limitations to Plaintiff,[5] it is not likely that Dr. Malaret was retreating from his firm clinical opinion that Plaintiff has diabetic neuropathy. If, on remand, it is determined by objective medical testing that Plaintiff is suffering from diabetic neuropathy, the ALJ should incorporate the results of that testing into a revised RFC assessment.

The Court also finds that the ALJ's failure specifically to include a shifting-of-positions option was erroneous. As Plaintiff argues, such a limitation was implied in the testimony of ME Dr. Malaret, who opined that, with regard to standing, Plaintiff "probably couldn't do more than one to two hours at a time in an

---

[5] Dr. Sirotenko observed that Plaintiff had zero degrees extension and 10 degrees flexion in his right knee and was "arreflexic" [sic] of the right patella." T.331. Dr. Sirotenko diagnosed diabetes and hypertension (by history) and right knee osteoarthritis with significantly limited range of motion. According to Dr. Sirotenko, Plaintiff's prognosis was "poor." T.332. He opined that Plaintiff had "[s]ignificant limitation regarding prolonged standing, walking, stairs, inclines, or ladders, kneeling, squatting, or bending"; that he "will require the use of an assistive or supportive device"; and that he "would benefit from activities of a sedentary nature only[,] with the opportunity to elevate his right leg." T.332.

eight-hour day, maybe up to four hours in an eight-hour day." T.48, 51.

Finally, the Court agrees that the ALJ failed to properly consider the medical necessity of Plaintiff using a cane. Social Security Ruling ("SSR") 96-9P provides that "[t]o find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information)." SSR 96-9P, 1996 WL 374185, at *7 (S.S.A. July 2, 1996). Here, Plaintiff testified that about 3 years ago a doctor whom he had seen prior to Dr. Stornelli recommended that he use a cane to more evenly distribute his weight. Plaintiff's use of a cane and his gait abnormality since that time is well-supported by the record. See T.312 (Dr. Stornelli; noting Plaintiff's "gait markedly antalgic[,] [he was] using cane to ambulate"); T.329-30 (CE Dr. Sirotenko; noting that Plaintiff "use[d] a cane for support and balance" and "[w]ithout his cane, his gait became more antalgic"); T.373 (Dr. Stornelli; Plaintiff "continues to ambulate slowly, uses cane, forward flexed gait"); T.377-78 (Dr. Stornelli; "very limited ambulation due to pain"; "using cane"; "slightly antalgic gait"); T.393 (Dr. Stornelli; "[w]alks with a markedly antalgic gait" and

"[u]ses a cane"); T.396 (Dr. Stornelli; "continues to ambulate with cane" and "reports instability rt [sic] knee"; "antalgic gait"; "decreased rom right hip"); T.401. (Dr. Stornelli; "antalgic gait" and "[u]ses a cane to ambulate").

Although the ALJ found Plaintiff capable of doing less than the full range of light work, he did not place any additional limitations on the amount Plaintiff was required to lift or the frequency with which he was required to perform lifting activities. As noted above, the regulations provided that light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 416.967(b). A job may also be in this category "when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." Id. SSR 83-10 provides that light work requires the "use of arms and hands to grasp and hold and turn objects." If Plaintiff needs to use a cane for support and balance, that would mean at least one hand is are not free to hold other objects and perform the lifting and carrying requirements of light work, which are not minimal. Cf. SSR 96-9P, 1996 WL 374185, at *7 (providing that handheld assistive devices may impact the ability to perform even the "minimal" lifting and carrying requirements of many sedentary unskilled occupations, such as when the individual must use a

handheld assistive device to aid in walking or standing due to an impairment in one lower extremity).

Because all of Plaintiff's limitations were not included in the RFC assessment, the Court cannot find that it was supported by substantial evidence, and remand is required.

## V. Conclusion

For the foregoing reasons, the Commissioner's denial of DIB was erroneous as a matter of law. Therefore, the Commissioner's motion for judgment on the pleadings is denied. Plaintiff's motion for judgment on the pleadings is granted to the extent that the Commissioner's decision is reversed, and the matter is remanded for further administrative proceedings consistent with this Decision and Order. In particular, Plaintiff should undergo objective medical testing for diabetic neuropathy, and the ALJ should incorporate the results of that testing, as well the necessity of Plaintiff's use of a handheld assistive device into a revised RFC assessment.

**SO ORDERED.**

S/Michael A. Telesca

_____
HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED:   July 29, 2015
         Rochester, New York